The Honorable John H. Chun

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> RAYVON DARNELL PETERSON, <br><br> Defendant. | NO. CR-23-090-05 JHC <br><br> UNITED STATES' SENTENCING MEMORANDUM |

Rayvon Peterson was an active participant and beneficiary in a scheme to defraud nearly every major federal pandemic assistance program of more than $6.8 million through the submission of more than 125 fraudulent applications and claims. Peterson personally defrauded the U.S. Department of Treasury's Emergency Rental Assistance program administered through the King County Eviction Protection and Rental Assistance Program; and the Economic Injury Disaster Loan Program administered by the U.S. Small Business Administration (SBA). In total, Peterson sought at least $440,846 and obtained at least $420,346 in pandemic assistance that should have gone to King County tenants on the verge of eviction and small businesses suffering from the economic impact of the COVID-19 pandemic. He systematically laundered and used

United States' Sentencing Memorandum
*United States v. Peterson*, CR23-090-JHC 05 - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

funds intended to support those in need for expenses such as a $70,000 Dodge Charger SRT Hellcat, diamond-encrusted jewelry and watches, designer goods, luxury trips, gambling, and potentially, an unlawfully obtained firearm.

The United States maintains that, as contemplated by the Plea Agreement, the appropriate sentence for Peterson is 33 months of imprisonment. However, the government acknowledges that imposing a sentence of 33 months after the Court sentenced co-defendant Tia Robinson to 18 months would create a sentencing disparity amongst the co-defendants who have the same offense and criminal history calculation scores, even though the Court appeared to heavily weigh Robinson's ACE score in its rationale.

The Court should further order Peterson to pay restitution in the amount of $420,346, as agreed upon in the Plea Agreement.

## I. BACKGROUND

### A. Peterson Stole Funds Intended for Vulnerable King County Residents and Small Businesses.

As the COVID-19 pandemic economically devasted Americans across the country, the federal government enacted measures to assist small businesses, legitimate workers who lost their jobs because of the pandemic, and tenants who were vulnerable to eviction. Among the earliest measures was federal funding for Economic Injury Disaster Loans (EIDL) of up to $2 million for eligible small businesses. PSR at ¶ 15. Peterson, who has limited employment history and no legitimate small business, viewed the EIDL program as an opportunity for self-enrichment.

Approximately three months after presidential declarations of a nationwide emergency and major disasters in every state, on July 1, 2020, Williams submitted a fraudulent EIDL application using Peterson's identity with his permission. PSR at ¶ 23. Peterson falsely claimed he was a sole proprietor of a "Barber" business and gross revenue of $45,000 the year prior to January 31, 2020. *Id.* The application directed the loan proceeds to be deposited into Peterson's bank account. *Id.* at ¶ 24. The application

United States' Sentencing Memorandum
*United States v. Peterson*, CR23-090-JHC 05 - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

was ultimately denied without being funded because SBA detected that the device Ms. Williams used to submit Peterson's application was also used to submit other fraudulent applications. *Id.* However, prior to the fraud being detected, Peterson received a $1,000 advance grant on July 2, 2020.

About a year later, Williams began defrauding the King County Eviction Protection and Rental Assistance Program (EPRAP), which had received over $300 million in federal Emergency Rental Assistance funds and state grants to help King County residents facing the loss of basic housing security as a result of the COVID-19 pandemic. It appears that Peterson was involved in Williams' first fraudulent EPRAP application, which used Peterson's sister's identity as the landlord for a fictitious tenant, Adrian Isom. Peterson impersonated Isom with EPRAP staff and suggested that he intended to use the criminal proceeds to make a car payment:

| Timestamp: Time | From | To | Text |
|---|---|---|---|
| 8/3/2021 10:54:21 PM(UTC-7) | WILLIAMS | PETERSON | I gave your number to this guy that helps with rental assistance i been emailing him his band is Andrew |
| 8/3/2021 10:54:39 PM(UTC-7) | WILLIAMS | PETERSON | I did the app under the Adrain isom guy name |
| 8/20/2021 7:53:36 PM(UTC-7) | PETERSON | WILLIAMS | Waiting for this move, it has to go thru 😭 my car note gonna be pullin from my acct at midnight 😬 |
| 8/26/2021 2:51:45 PM(UTC-7) | WILLIAMS | PETERSON | 738 Bridges Ave S, Kent WA 98032 |
| 8/26/2021 3:30:20 PM(UTC-7) | PETERSON | WILLIAMS | What's the details |
| 8/26/2021 3:32:59 PM(UTC-7) | WILLIAMS | PETERSON | Your behind on rent you need help |
| 8/26/2021 3:35:09 PM(UTC-7) | WILLIAMS | PETERSON | Say you being like 5/6 months now |
| 8/26/2021 3:35:24 PM(UTC-7) | WILLIAMS | PETERSON | 6/7 |
| 8/26/2021 3:36:31 PM(UTC-7) | WILLIAMS | PETERSON | Tell him your daughter stays with your |
| 8/26/2021 3:36:33 PM(UTC-7) | WILLIAMS | PETERSON | You |
| 8/26/2021 3:40:54 PM(UTC-7) | PETERSON | WILLIAMS | Adrianisom@yahoo.com |

United States' Sentencing Memorandum
*United States v. Peterson*, CR23-090-JHC 05 - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Timestamp: Time | From | To | Text |
|---|---|---|---|
| 8/26/2021 3:41:10 PM(UTC-7) | WILLIAMS | PETERSON | Yeah that's the email |
| 8/26/2021 3:43:08 PM(UTC-7) | PETERSON | WILLIAMS | What's [SISTER'S] email |
| 8/26/2021 3:43:49 PM(UTC-7) | PETERSON | WILLIAMS | They have her name and number |
| 8/26/2021 3:44:10 PM(UTC-7) | PETERSON | WILLIAMS | They might call after |
| 8/26/2021 3:44:25 PM(UTC-7) | WILLIAMS | PETERSON | [SISTER]081586@gmail.com |
| 8/26/2021 3:45:21 PM(UTC-7) | WILLIAMS | PETERSON | How many months you say your behind |
| 8/26/2021 3:49:19 PM(UTC-7) | PETERSON | WILLIAMS | Haven't got that far |
| 8/26/2021 3:49:19 PM(UTC-7) | PETERSON | WILLIAMS | What's the monthly l? |
| 8/26/2021 3:49:55 PM(UTC-7) | WILLIAMS | PETERSON | 2200 |

On about September 1, 2021, Peterson informed Williams that EPRAP staff contacted his sister and directed Williams to provide his sister the relevant information about the fraudulent application. On about September 10, 2021, $17,550 in EPRAP funds were disbursed to Peterson's sister's account.

As time progressed, Peterson took a more active role in the scheme, obtaining free disposable phone numbers (e.g., TextNow phone numbers) to associate with fake tenants, completing portions of the fraudulent applications himself. In the following exchange, Peterson informed Williams the fictitious information he used for a fraudulent EPRAP application involving a fictitious tenant named "Tanner Wilson":

| Timestamp: Time | From | To | Text |
|---|---|---|---|
| 11/1/2021 11:07:07 AM(UTC-7) | PETERSON | WILLIAMS | June 23 1982 |
| 11/1/2021 11:07:20 AM(UTC-7) | PETERSON | WILLIAMS | Caucasian |
| 11/1/2021 11:07:29 AM(UTC-7) | PETERSON | WILLIAMS | Tanner |

United States' Sentencing Memorandum
*United States v. Peterson*, CR23-090-JHC 05 - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Timestamp: Time | From | To | Text |
|---|---|---|---|
| 11/1/2021 11:07:31 AM(UTC-7) | **PETERSON** | WILLIAMS | Wilson |
| 11/1/2021 11:07:58 AM(UTC-7) | WILLIAMS | **PETERSON** | Ok |
| 11/1/2021 11:08:49 AM(UTC-7) | **PETERSON** | WILLIAMS | 2 rooms |
| 11/1/2021 11:09:22 AM(UTC-7) | **PETERSON** | WILLIAMS | Water included in rent |
| 11/1/2021 11:23:52 AM(UTC-7) | WILLIAMS | **PETERSON** | Do the lease |
| 11/1/2021 11:24:15 AM(UTC-7) | WILLIAMS | **PETERSON** | Did you say how much for rent |
| 11/1/2021 11:27:08 AM(UTC-7) | **PETERSON** | WILLIAMS | She didn't ask |
| 11/1/2021 11:27:10 AM(UTC-7) | WILLIAMS | **PETERSON** | Imma have to do ledger when I get home |

EPRAP records show that the application for "Tanner Wilson" was associated with the landlord account of "Shirley William," one of Williams' alias in the scheme. Approximately four days after the text exchange, on about November 5, 2021, Williams' bank account received $34,308 in EPRAP funds for the fraudulent application Peterson and Williams submitted for "Tanner Wilson."

Peterson also took an active role in laundering the funds between and amongst Williams' and Peterson's associates whose identities were used to execute the scheme:

| Timestamp: Time | From | To | Text |
|---|---|---|---|
| 1/17/2022 9:09:43 AM(UTC-8) | **PETERSON** | WILLIAMS | You leaving this week how we gonna get the $$ from [ASSOCIATE]? Can't leave that much money wit ppl, always some weird excuses when it come to this shit |
| 1/17/2022 9:10:15 AM(UTC-8) | WILLIAMS | **PETERSON** | I can have him meet you |
| 1/17/2022 9:10:25 AM(UTC-8) | WILLIAMS | **PETERSON** | He knows better |
| 1/17/2022 9:11:15 AM(UTC-8) | **PETERSON** | WILLIAMS | How much he getting? |
| 1/17/2022 9:11:42 AM(UTC-8) | WILLIAMS | **PETERSON** | It's 38 I told him keep the 8 |

United States' Sentencing Memorandum
*United States v. Peterson*, CR23-090-JHC 05 - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Over the course of approximately six months, Peterson participated in the filing of at least 13 fraudulent applications, including five that used Peterson's own identity as the fraudulent landlord. *See* PSR at ¶ 25. Williams generated fake documents, including ledgers and landlord attestations, that were submitted to support the applications. *Id.* Peterson, Williams, and their associates impersonated landlords and tenants associated with the fraudulent applications. The applications caused King County to pay at least $419,346 in Emergency Rental Assistance funds to bank accounts belonging to Peterson, Williams, and their associates. *Id.* at ¶ 28. Upon receipt of the criminal proceeds, Peterson methodically laundered the funds through cash withdrawals, wire transfers, and expensive purchases. Dkt. 132 at ¶ 8.f.

B. **Peterson Stole Pandemic Emergency Rental Assistance for a Luxurious Lifestyle.**

As co-parents and partners in life and crime, Peterson and Williams co-mingled their criminal proceeds. On October 24, 2021, Peterson and Williams argued over text about Williams and his sister not telling him when they received the funds from the application for which Peterson impersonated "Adrian Isom." In an expression of his frustration, Peterson texted, "IF WE PUT SOMETHIN TOGETHER AS A UNIT IT SHOULD BE FINISHED AS A UNIT PERIOD". Williams took issue with the suggestion that she had cut Peterson out of proceeds and responded, "I know you ain't talking there was times when I actually gave you money to flip and never got it. & when I put you on and you got the check you never gave me nothing." The pair's comingled assets and expenditures were also apparent a few months later when Peterson texted Williams "I need you to wire exclusive $5kthis [sic] weekend". Mr. Exclusive is the Boston-based jeweler who Williams and her co-defendants frequented for custom diamond jewelry, and Peterson's social media posts in April 2022 showcased the jewelry. *See infra* at 9.

United States' Sentencing Memorandum
*United States v. Peterson*, CR23-090-JHC 05 - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  In fact, Peterson used the pandemic aid he and Williams stole for a $70,000 Dodge Charger SRT Hellcat, diamond jewelry, designer goods, luxury trips, gambling, and, potentially, an unlawfully obtained firearm. *See* PSR at ¶¶ 29,

Peterson's collateral benefit from Williams' large-scale fraud was apparent in June 2021, when Peterson vacationed with Williams on a lavish trip to Miami. During the trip, Williams spent $4,200 to rent a Lamborghini Huracan Coupe for three days. *See* Ex. A, Email re Your reservation (DLRM-10442647) (June 21, 2021). When police attempted to pull over the car for blackout tinted windows, it became clear that Peterson had been driving, but the pair switched seats by the time the officer approached the car. PSR at ¶ 65. Peterson was arrested for driving with a suspended license, and the matter remains pending. *Id*.

Additionally, on or about July 6, 2021, using a fraudulent earnings statement from Williams' storefront salon, Extended Beauties, Peterson purchased a $70,000 Dodge Charger SRT Hellcat with a $20,000 cash downpayment and monthly payments of nearly $850. *See* Ex. B at 1-2, 5, 7.



United States' Sentencing Memorandum
*United States v. Peterson*, CR23-090-JHC 05 - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Immediately after depleting EPRAP funds intended to assist King County residents on the brink of eviction, in late February 2022, Peterson vacationed in Las Vegas. On a single day, Peterson spent over $10,000 at the luxurious Wynn Las Vegas Resort and Casino.

Two months later, and with little to no legitimate source of income (see PSR at ¶ 121), in April 2022, Peterson posted a series of Instagram posts that showcased a pair of diamond-encrusted Rolex and Cartier watches, Christian Dior shoes, and what appears to be a necklace with a large custom diamond pendant from Mr. Exclusive:



United States' Sentencing Memorandum
United States v. Peterson, CR23-090-JHC 05 - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Around the same time, Peterson's TikTok account featured the diamond-encrusted jewels:



According to Williams' social media, a few months later, in June 2022, Peterson and Williams celebrated Peterson's birthday in a lavish trip to New York, complete with nights out clubbing, luxury cars, and a custom cake:



United States' Sentencing Memorandum
*United States v. Peterson*, CR23-090-JHC 05 - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

A month later, on July 28, 2022, Peterson—who is prohibited from possessing a firearm—purchased a firearm from a person on the street in Las Vegas. PSR at ¶ 69. Although the government does not have any direct evidence that the gun was purchased with proceeds of Peterson's pandemic fraud, it would be reasonable to infer that Peterson used criminal proceeds to illegally purchase the firearm given Peterson's limited employment and the timing of the purchase within months of obtaining hundreds of thousands of dollars in emergency rental assistance.

Even after the FBI executed a search warrant on Williams' Kent home in March 2022, Peterson continued to bask in a lavish life punctuated by criminal activity with Williams in Arizona. Using the alias of "Darnell Peterson," the pair first rented a luxury townhome in a gated Scottsdale complex that describes itself as "resort-style living,"[1] complete with a 60-foot pool, sauna, and spa facilities:



---

[1] https://www.catherinescottsdale.com/photogallery.aspx

United States' Sentencing Memorandum
*United States v. Peterson*, CR23-090-JHC 05 - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The pair elected to stop paying rent in Scottsdale and were evicted in March 2023, after Williams signed a lease for them to live in a luxury apartment complex in Phoenix. *See* Ex. C, FBI Report (Mar. 15, 2023). That same month, Williams and Peterson are suspected of shoplifting a $1,800 designer purse from a Scottsdale retailer. *See* PSR at ¶ 61.

## II. PROCEDURAL HISTORY

On May 31, 2023, the Grand Jury returned a 26-count indictment, charging Paradise Williams, D'Arius Jackson, Jahri Cunningham, Tia Robinson, Rayvon Peterson, and David Martinez with various counts of wire fraud in connection with a presidentially declared emergency or major disaster, in violation of 18 U.S.C. § 1343; and money laundering. Dkt. 1. Williams was charged with all 19 counts of wire fraud (Counts 1-19) and two counts of money laundering (Counts 25-26) for the purchase of two luxury vehicles. Peterson was charged with three counts of wire fraud (Counts 1, 11, 17) and one count of concealment money laundering, in violation of 18 U.S.C. 1956(a)(1)(B)(i) (Count 20).

On June 5, 2023, Peterson was arrested in the Western District of Washington and has been detained since then.

On November 13, 2023, Peterson pled guilty to wire fraud as charged in Count 17. Dkt. 130-33.

## III. SENTENCING GUIDELINES CALCULATIONS

The United States agrees with the Probation Office on the Sentencing Guidelines calculations and has no objections to the facts contained in the PSR.

The following calculation applies to wire fraud as charged in Count 10:

| Item | Guideline | Adjustment |
|---|---|---|
| Base | 2B1.1(a)(1) | +7 |
| Intended Loss in Excess of $250,000 | 2B1.1(b)(1)(G) | +12 |
| Sophisticated Means | 2B1.1(b)(10) | +2 |

United States' Sentencing Memorandum
*United States v. Peterson*, CR23-090-JHC 05 - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Theft of Major Disaster or National Emergency Benefits | 2B1.1(b)(12) | +2 |
|---|---|---|
| Acceptance | 3E1.1 | -3 |
| **Total** | | **20** |

*See* PSR at ¶¶ 39-50.

The defendant's total criminal history score is one, which correlates with a criminal history category of I. *Id.* at ¶ 59. The resulting Guidelines range is 33 to 41 months of imprisonment. *Id.* at ¶ 131.

## IV. SENTENCING RECOMMENDATION

The United States recommends that the Court impose a term of imprisonment of 18 months, followed by three years of supervised release. The government is recommending a variance from the Guidelines to avoid a sentencing disparity with Peterson's co-defendant Tia Robinson.

For the reasons set forth below, this recommendation is appropriate given "the nature and circumstances of the offense," and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to ensure adequate general deterrence, and "to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(C).

**A. The Nature and Circumstances of the Offense—Peterson's Exploitation of Multiple Pandemic Assistance Programs During an Unprecedented National Emergency is an Aggravating Factor.**

Because nearly four years have lapsed since the onset of the COVID-19 pandemic, it is easy to forget the chaotic, desperate, and dire circumstances facing our nation and our government's attempts to stem the catastrophic economic impact of the COVID-19 pandemic. Schools, businesses, and restaurants shuttered, while hospitals were

United States' Sentencing Memorandum
*United States v. Peterson*, CR23-090-JHC 05 - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

overwhelmed with patients dying of COVID-19.[2] In 2020, a safe and effective COVID-19 vaccine was unfathomable to most. Yet, Peterson saw the pandemic and its consequences not as a public health catastrophe but as an opportunity to exploit for fast cars, designer goods, diamonds, and luxury travel.

**Emergency Rental Assistance.** To mitigate the spread of COVID-19, federal, state, and local governments—including Washington and cities in King County—enacted eviction moratoriums that ensured residents remained housed during the global pandemic. The moratoriums were intended to assist the millions of Americans facing financial hardship. The last federal moratorium ended on October 3, 2021; Washington's statewide moratorium ended on October 31, 2021; and Seattle's moratorium ended on January 15, 2022.

In anticipation of exacerbating existing housing crises amidst the ongoing pandemic when the moratoriums ceased, the U.S. Department of Treasury began disbursing Emergency Rental Assistance Program funds to state, local, and tribal governments in early 2021. From March 2021 through 2022, Washington State and local governments, including King County, received over $900 million in federal emergency rental assistance. Nevertheless, the administrating agencies acknowledged that there was insufficient funding to help every household who qualified, thus, the screening criteria was intended to target those most likely to become homeless but for the assistance. Even so, during the first two years of the pandemic, between 2020 and 2022, the homeless population in Washington State increased by approximately 10%.[3]

Peterson drained scarce resources available to assist those on the brink of eviction during a national emergency. Every dollar Peterson diverted from the Emergency Rental

---

[2] *See, e.g.,* Cha, Ariana, "Faced with a crush of patients, besieged NYC hospitals struggle with life-or-death decisions," *The Washington Post* (Mar. 31, 2020), *available at* https://www.washingtonpost.com/health/2020/03/31/new-york-city-hospitals-coronavirus/.

[3] U.S. Dep't of Housing and Urban Development, "The 2022 Annual Homelessness Assessment Report to Congress," (Dec. 2022) at 109, *available at* https://www.huduser.gov/portal/sites/default/files/pdf/2022-AHAR-Part-1.pdf.

United States' Sentencing Memorandum
*United States v. Peterson*, CR23-090-JHC 05 - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Assistance Program for his extravagant purchases should have been used to keep a King County resident housed through the winter of 2021 and 2022.

**Small Business Assistance.** In July 2020, when Peterson authorized Williams to file his fraudulent EIDL application for funds intended to assist small businesses, American business owners had seen their livelihoods vanish overnight, an unprecedented occurrence in our nation's history and a far more severe economic impact than the 1918 influenza.[4] In fact, in July 2020, only approximately half of small businesses were fully open and most worried about having to permanently close due to prolonged closures.[5] Although Peterson only obtained a $1,000 advance grant, he contributed to the onslaught of fraudulent claims that clogged the infrastructure in place to distribute aid and delayed or denied genuine small business owners assistance.[6]

**Sentencing Enhancements.** Notably, both Congress and the Sentencing Commission have endorsed sentencing enhancements during national emergencies and major disasters. *See* 18 U.S.C 1343 (increases maximum penalties to 30 years imprisonment and $1 million fine); USSG § 2B1.1(b)(2)(12) (two-level increase applied for offenses involving disaster fraud). Congress enacted the enhanced statutory penalty for wire (and mail) fraud in response to reports of widespread fraud and abuse in connection to disaster funds disbursed for Hurricanes Katrina and Rita. The Senate Judiciary Committee report noted:

> We want to help ensure that federal money goes to the right people and does not get stolen by criminals posing as victims. Congress wants to provide appropriate recovery and relief resources to affected States, and

---

[4] Bartik, Alexander, et al., "How Are Small Businesses Adjusting to COVID-19? Early Evidence From a Survey," *Nat'l Bureau of Economic Research* (Apr. 2020), at 3, 8, *available at* https://www.nber.org/system/files/working_papers/w26989/w26989.pdf.
[5] U.S. Chamber of Commerce, "July 2020 Small Business Coronavirus Impact Poll" (July 29, 2020), *available at* https://www.uschamber.com/small-business/july-2020-small-business-coronavirus-impact-poll.
[6] *See, e.g.,* Trish Turner, "'Double the number of users' in PPP system as it reopens with more technical issues," ABC News (April 27, 2020), *available at* https://abcnews.go.com/Politics/double-number-users-ppp-system-reopens-technical-issues/story?id=70370289.

United States' Sentencing Memorandum
*United States v. Peterson*, CR23-090-JHC 05 - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

also ensure that these resources are protected and distributed only to the real victims–not to individuals seeking to take advantage of the disaster.

Senate Report No. 110-69, 110th Cong., 1st Session (May 22, 2007).

In this case, by the onset of the COVID-19 pandemic, Peterson was already a convicted felon and had already familiarized himself with the criminal justice system through the course of over a dozen arrests. While the government sought to prioritize the well-being of a suffering nation, Peterson took advantage of the vulnerable period for self-enrichment.

**B.    Defendant's History and Characteristics**

    **1.    Peterson's Criminal History Category of I Understates His Criminal Activity.**

Peterson's Criminal History Category of I understates his criminal activity. Although only one of Peterson's seven criminal convictions scores, Peterson has been arrested over a dozen times and appears to have multiple pending uncharged offenses in various jurisdictions. *See* PSR at ¶¶ 63-82. While many of the arrests are driving offenses, they also include residential burglary and multiple firearm offenses. *Id.* at ¶¶ 58, 69, 73. Peterson's unyielding disregard for the law, even after three separate custodial sentences, is an aggravating factor.

    **2.    Peterson's Luxurious Lifestyle is an Aggravating Factor.**

As detailed above, Peterson used his criminal proceeds for a fast car, designer goods, diamond jewelry, luxury travel, gambling, and potentially, an unlawful firearm. His use of emergency pandemic assistance for these purposes while King County residents on the brink of eviction suffered is unconscionable.

**C.    A Significant Term of Imprisonment is Necessary to Deter and is Just Punishment for the Offense.**

The United States maintains that, as contemplated by the Plea Agreement, the appropriate sentence for Peterson is 33 months of imprisonment. This term is necessary and just punishment for Peterson's conduct, given the facts and circumstances discussed

United States' Sentencing Memorandum
*United States v. Peterson*, CR23-090-JHC 05 - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

above. The proposed sentence is also necessary to deter Peterson from further criminal behavior and promote rule of law. However, the government acknowledges that imposing a sentence of 33 months after the Court sentenced co-defendant Tia Robinson to 18 months would create a sentencing disparity amongst the co-defendants who have the same offense and criminal history calculation scores, even though the Court appeared to heavily weigh Robinson's ACE score in its rationale.

## V. CONCLUSION

The Court should sentence Peterson to a significant term of imprisonment, followed by three years of supervised release. The Court should further order Peterson to pay $420,346 in restitution, as agreed upon in the Plea Agreement.

Dated: March 11, 2024

Respectfully submitted,

TESSA M. GORMAN
United States Attorney

/s/ Cindy Chang
CINDY CHANG
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-7970
Fax: 206-553-0582
Email: Cindy.Chang@usdoj.gov

United States' Sentencing Memorandum
*United States v. Peterson*, CR23-090-JHC 05 - 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970